UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGEL RIVERA,

                Plaintiff,

v.

WESTCHESTER COUNTY, *et al.*,

                Defendants.

No. 18-CV-8354 (KMK)

OPINION & ORDER

Appearances:

Angel Rivera
Valhalla, NY
*Pro Se Plaintiff*

Thomas J. Bracken, Esq.
Bennett, Bricklin & Saltzburg LLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Angel Rivera ("Plaintiff"), currently incarcerated at Westchester County Jail ("WCJ"), brings this pro se Action under 42 U.S.C. § 1983 against Westchester County; Aramark Correctional Services ("Aramark"); Donna Blackman ("Blackman") and Manuel Mendoza ("Mendoza"), each Aramark employees; Joseph K. Spano ("Spano"), Commissioner of the Westchester County Department of Correction ("WCDOC"); Leandro Diaz ("Diaz"), Deputy Commissioner of WCDOC; Eric Middleton ("Middleton"), Francis Delgrosso ("Delgrosso"), and Karl Vollmer ("Vollmer"), each Assistant Wardens at WCDOC; (collectively, "Defendants"). (*See* Compl. (Dkt. No. 2).)[1] Plaintiff alleges that Defendants violated his

---

[1] In his Complaint, Plaintiff identifies certain Defendants with incomplete or incorrectly spelled names. (*See* Compl. 2–5.) The Court uses the complete and correct spellings of Defendants' names as provided by Defendants.

constitutional rights while he was incarcerated at WCJ. Before the Court is Aramark, Blackman, and Mendoza's (together, "Aramark Defendants") Motion To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 21).) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint, and are taken as true for the purpose of resolving the instant Motion.

On June 18, 2018, Plaintiff arrived at WCJ. (Compl. 5.)[2] Since his arrival, Plaintiff has received meals that "arrived reeking of old food, under cooked meat and over cooked rice, spag[h]etti noodles, minimal portions, molded bread/sta[l]e bread, [and] served on meal trays that are covered in mold, as . . . are the juice containers." (*Id.*) Specifically, on June 24, 2018, Plaintiff's meal arrived on a meal tray "that was covered in black mold spots, contained under cooked meat that was bloody internally," included "stale bread," and came with a juice container "covered in mold." (*Id.*) Plaintiff attempted to file a grievance with Sergeant Kitt ("Kitt"), but Kitt informed him that Defendant Delgrosso "and the higher ups did not want sergeants accepting Aramark food[-]related grievances," and refused to accept Plaintiff's grievance. (*Id.* at 6.) On June 26, July 2, and July 7, 2018, Plaintiff's meals contained undercooked meat that was "pink and bloody," along with overcooked rice, spaghetti, and noodles. (*Id.*) Plaintiff requested a replacement tray, but the kitchen staff told him to "cook out the food . . . in the microwave." (*Id.*) However, Plaintiff had no access to a microwave. (*Id.*) On July 20, 2018, Plaintiff was served a meal of chili and beans that "reeked of old[,] rotting food." (*Id.*) Correctional staff

---

[2] The Complaint does not use consistent page numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the Amended Complaint.

2

assured him that the food was safe to eat, but after he consumed it, he "began to suffer several ailments." (*Id.*) On August 2, 9, 11, 14, and 24, 2018, Plaintiff again "received under cooked meat on his trays along with overcooked spag[h]etti served on molded meal trays." (*Id.* at 7.) On August 14, 2018, Plaintiff attempted to submit another grievance, this time with Sergeant Martinez ("Martinez"), but Martinez refused to accept the grievance, saying he was prohibited from accepting food-related grievances. (*Id.*)

Plaintiff alleges that his juice containers were "always covered in mold," and so he did not drink his juice and therefore "usually was extremely thirsty and dehydrated." (*Id.*) Plaintiff also states that his meal trays were "always short with minimal items and small portions," causing him "to lose significant weight" and experience "fatigue from lack of nutrients." (*Id.*) Plaintiff "continues to receive under cooked foods 2-3 [times] a week served on mold[y] meal trays, that almost every day contain leftover[,] dirty foods from previous meals as a result of inmate workers failing to property clean the tray[s]." (*Id.* at 8.) Further, on six separate occasions Plaintiff has discovered human hair in his meals "as a result of inmate workers not being properly supervised when preparing inmate meals," and failing to wear hair nets, beard nets, and gloves while preparing food. (*Id.*) Plaintiff also alleges that the inmate kitchen "is extremely dirty, and covered in flies, along with mice/rats who invade the food supply on a constant basis." (*Id.* at 9.)

"Plaintiff avers[] that Defendants Mendoza, Blackman, Vollmer, Middleton, Delgrosso, Spano, Diaz, [and] Westchester County had sufficient prior knowledge that the food being served to inmates at WCDOC was substandard, causing dozens of inmates to become sick," as demonstrated by the "previous and present lawsuits, grievances, complaints, and daily meetings . . . where grievances are discussed." (*Id.*) However, Defendants have not corrected the problem

3

and inmates continue to become ill due to poor food quality and sanitation. (*Id.*)  Plaintiff has experienced weight loss, nausea, vomiting, diarrhea, fatigue, headaches, blurred vision, hunger pangs, and stomach cramps as a result of the substandard food provided. (*Id.* at 10.)  He seeks $300,000 in compensatory damages and $1,000,000 in punitive damages. (*Id.* at 12–13.)

B.  Procedural Background

Plaintiff's initial Complaint and application to proceed in forma pauperis ("IFP") were filed on November 12, 2018. (Dkt. Nos. 1, 2.)  The Court granted Plaintiff's IFP application on September 17, 2018. (Dkt. No. 4.)  On February 7, 2019, Aramark Defendants filed the instant Motion To Dismiss and accompanying papers. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 22).)  Plaintiff never filed a response, and the Court deemed the Motion fully submitted on May 24, 2019. (Dkt. No. 24.)

## II.  Discussion

Aramark Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that Plaintiff's injuries are not recoverable under the Prison Litigation Reform Act ("PLRA"), and that Plaintiff fails to allege personal involvement, fails to state a *Monell* claim, and fails to state an Eighth Amendment claim. (*See generally* Defs.' Mem.)  The Court addresses each argument separately to the extent necessary.

A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

4

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d

302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B.  Analysis

1.  Personal Involvement

Aramark Defendants argue that Plaintiff has failed to plead the personal involvement of Blackman and Mendoza as required to state a § 1983 claim. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official

6

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

There is a single allegation against Blackman and Mendoza relating to Plaintiff's receipt of substandard food. Specifically, Plaintiff alleges that these individuals "had sufficient prior knowledge that the food being served to inmates at WCDOC was substandard, . . . causing dozens of inmates to become sick," as demonstrated by the "previous and present lawsuits, grievances, complaints, and daily meetings . . . where grievances are discussed." (Compl. 9.) This lone conclusory allegation that each Defendant knew of but failed to meaningfully remedy the problem is insufficient. There is no allegation that either Blackman or Mendoza participated directly in the preparation or sale of food at all (let alone in the preparation or sale of the particular food at issue), established a policy or custom that allowed for rotten food to be provided to inmates, failed to follow a policy or custom on food preparation or were otherwise grossly negligent in allowing others to prepare food without following proper procedures, failed to remedy the food preparation problem after being notified of the issue, or were deliberately indifferent to Plaintiff's condition after being informed of his illness and its cause. *See Grullon*, 720 F.3d at 139 (listing various ways to show personal involvement). Nor does the bare fact that these two Defendants appear to hold supervisory roles change the analysis, for a defendant "cannot be held liable for the service of rotten [food] based on a *respondeat superior* theory." *Reznickcheck v. Molyneaux*, No. 13-CV-1857, 2014 WL 3746540, at *2 (E.D. Pa. July 29, 2014) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)); *see also Iqbal*, 556 U.S. at

7

676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are, in sum, no alleged facts showing that the individuals named as Defendants were personally involved in the alleged unconstitutional deprivation at issue. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation).

Accordingly, Plaintiff fails to allege the personal involvement of Blackman or Mendoza in the alleged unconstitutional deprivations at issue. Plaintiff's claims against Blackman and Mendoza in their individual capacities are therefore dismissed.

### 2. *Monell* Liability Against Aramark

Defendant argues that Plaintiff has failed to state a *Monell* claim against Aramark. (Defs.' Mem. 8–10.) "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).

Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Liberally construed, Plaintiff seeks to establish *Monell* liability based on the third and fourth prongs. The Complaint alleges that Aramark "ha[s] grossly supervised [its] contractors and inmate workers for such a duration[] that Defendants, and inmate workers[,] believe that their act(s) and/or omissions will . . . be tolerated." (Compl. 11.) Plaintiff also alleges that there have been numerous "previous and present lawsuits, grievances, complaints, and daily meetings" in which inmate grievances relating to substandard food were discussed. (*Id.* at 9.)

With respect to Plaintiff's allegation that Defendants failed to properly train and supervise kitchen workers, Plaintiff's Complaint does not contain sufficient factual matter to state a claim. Although "[a] municipality's failure to properly train its employees can under certain circumstances give rise to *Monell* liability, . . . a claim based on this theory still must be

9

properly pled under *Iqbal*." *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) (citation and footnote omitted). To state a claim for municipal liability based on failure to train, Plaintiff must allege facts that support an inference that Aramark failed to train its employees, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) ("To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." (citation omitted)); *Acosta v. City of New York*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where the plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because the plaintiff "failed to set forth factual allegations that would support a plausible inference that the City's 'policies' or 'customs' caused [the] alleged violations of the plaintiff's rights"). To set forth a failure to train claim, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015). In particular, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiff's claim that Aramark failed to train and supervise its staff is a "boilerplate assertion[]" and is therefore insufficient, without more, to state a *Monell* claim. *Araujo v. City of*

10

*New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where a plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct"); *see also Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where a plaintiff alleged failure to supervise kitchen workers who did not wear hair nets because the complaint was "devoid of any detailed factual allegations" that WCDOC lacked "a relevant training or supervisory program" or that WCDOC "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program"). Plaintiff has cited no specific deficiency in Aramark's training or supervision protocols. It is true that a plaintiff may establish deliberate indifference for a failure to supervise claim by showing "that the need for more or better supervision to protect against constitutional violations was obvious," from the fact that there "were repeated complaints of civil rights violations," and that "the complaints [were] followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (quotation marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (quotation marks omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same). However, cases where plaintiffs have successfully established deliberate

11

indifference by pointing to previous grievances and lawsuits involve pleadings that name and detail the previous suits. *See Tieman*, 2015 WL 1379652, at *19–21 (holding that the plaintiff sufficiently alleged the need for better training or supervision where the plaintiff listed and detailed nine other complaints raising similar allegations against same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4–5 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, *8 n.7 (N.D.N.Y. Mar. 31, 2014) (stating that the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient to state a plausible failure to train case).

Although Plaintiff alleges that numerous similar lawsuits, grievances, and complaints against Aramark have been filed, he fails to provide any factual details regarding these other lawsuits and grievances. The absence of such detail dooms Plaintiff's Complaint. *See Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim against Aramark and county alleging plaintiff was served unhygienic and inedible food where plaintiff did not allege the existence of any policy, any actions taken or decisions made by policymaking officials, any systemic failures to train or supervise, or any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634, at *4–5 (S.D.N.Y. Mar. 25, 2019) (same); *see also McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional

12

deprivation); *Ackridge v. Aramark Corr. Food* Servs., No. 16-CV-6301, 2018 WL 1626175, at *13 (S.D.N.Y. Mar. 30, 2018) (dismissing *Monell* claim against county alleging plaintiff was not served kosher food because plaintiff failed to allege any specific facts about a custom or policy aside from the facts of his own case); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citation omitted)).

Accordingly, Plaintiff's claims against Aramark must be dismissed, as well as any official capacity claims Plaintiff intended to assert against Blackman and Mendoza. *See McKenzie*, 2018 WL 6831157, at *7 (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *7 (S.D.N.Y. Aug. 29, 2016) (dismissing plaintiff's claims against municipal employees in their official capacities where the complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice").[3]

### III. Conclusion

For the reasons stated above, Aramark Defendants' Motion To Dismiss is granted.[4] Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If

---

[3] Because Plaintiff failed to establish the personal involvement of any individual Defendants or *Monell* liability against the municipal Defendants, the Court need not address Defendants' arguments that Plaintiff fails to state an Eighth Amendment claim.

[4] The Court notes that allegations nearly identical to Plaintiff's very concerning claims regarding poor food sanitation and quality have recently been raised in numerous other actions against Westchester County and Aramark in this District. *See, e.g.*, *Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *1 (S.D.N.Y. Aug. 19, 2019); *Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, at *4 (S.D.N.Y. July 29, 2019),

Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.[5]

---

*Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *1 (S.D.N.Y. July 25, 2019), *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661, at *1–2 (S.D.N.Y. June 7, 2019); *Mercedes*, 2019 WL 1429566, at *2; *Hoffstead*, 2019 WL 1331634, at *1–2; *Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462, at *2–3 (S.D.N.Y. Mar. 21, 2019); *Ross v. Aramark Corp.*, No. 18-CV-2246, 2019 WL 1172383, at *2 (S.D.N.Y. Mar. 13, 2019); *Quick*, 2019 WL 1083784, at *1–2; *White v. Westchester County*, No. 18-CV-990, 2018 WL 6493113, at *1–2 (S.D.N.Y. Dec. 10, 2018); *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *2–3 (S.D.N.Y. Mar. 30, 2018). The Court expects that Counsel for Defendants will take note and discuss the serious allegations raised in these cases with her clients.

[5] As Judge Briccetti recently put it in a similar case alleging deficient food at Westchester County Jail, Plaintiff should, in amending his complaint:

1. give the dates and times of each incident in which [he] was served the food described in his complaint;

2. describe how each defendant was involved in serving [him] such food—for example, whether the defendant personally served him that food, was present when [he] was served such food, or otherwise knew [he] was served the food;

3. describe how each defendant knew or should have known the food served to [him] was inadequate;

4. state which, if any, defendants [he] informed of the problems with his food on each such occasion, how the defendants responded to his complaints, and how the defendants' responses or lack thereof contributed to his injury;

5. include any details why [he] believes Aramark, Westchester County, or any of their employees gave him such food or failed to remedy his complaints; and

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 21), and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: August 22, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

6. include any facts regarding the existence of an official Aramark or Westchester County policy or [unofficial] custom that caused the deprivation of a constitutional right.

*Crispin*, 2019 WL 2419661, at *5.