UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGEL RIVERA,

                              Plaintiff,

        v.

WESTCHESTER COUNTY, *et al.*,

                              Defendants.

---

No. 18-CV-8354 (KMK)

OPINION & ORDER

Appearances

Angel Rivera
Valhalla, NY
*Pro se Plaintiff*

Joseph DeDonato, Esq.
Bennett, Bricklin & Saltzburg LLC
New York, NY
*Counsel for Defendants*

Sean Timothy Carey, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants Westchester County, Joseph K. Spano, Leandro Diaz, Eric Middleton,*
*Francis Delgrosso, and Karl Vollmer*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Angel Rivera ("Plaintiff"), currently incarcerated at Westchester County

Jail ("WCJ"), brings this Action, pursuant to 42 U.S.C. § 1983, against Westchester County

("Westchester" or the "County"); Aramark Correctional Services, LLC ("Aramark"); Donna P.

Blackman ("Blackman") and Manuel Mendoza ("Mendoza"), each Aramark employees; Joseph

K. Spano ("Spano"), Commissioner of the Westchester County Department of Correction

("WCDOC"); Leandro Diaz ("Diaz"), Deputy Commissioner of WCDOC; Eric Middleton

("Middleton"), Francis Delgrosso ("Delgrosso"), and Karl Vollmer ("Vollmer"), each Assistant Wardens at WCDOC (collectively, "Defendants").  (*See* Compl. (Dkt. No. 2).)[1]  Plaintiff alleges that Defendants violated his constitutional rights while he was incarcerated at WCJ.  Before the Court is the County, Spano, Diaz, Middleton, Delgrosso, and Vollmer's (collectively, "County Defendants") Motion To Dismiss (the "Motion").  (*See* Not. of Mot. (Dkt. No. 33).)  For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purpose of resolving the instant Motion.

On June 18, 2018, Plaintiff arrived at WCJ.  (Compl. 5.)[2]  Since his arrival, Plaintiff has received meals that "have arrived reeking of old food," that have contained "under cooked meat and over cooked rice, spag[h]etti[,] or noodles, minimal portions, [and] molded bread/sta[l]e bread," and that have been "served on meal trays that are covered in mold, as . . . are the juice containers."  (*Id.*)  Specifically, on June 24, 2018, Plaintiff's meal arrived on a meal tray "that was covered in black mold spots, contained under cooked meat that was bloody internally," included "stale bread," and came with a juice container "covered in mold."  (*Id.*)  Plaintiff attempted to file a grievance with Sergeant Kitt ("Kitt"), but Kitt informed him that Delgrosso "and the higher ups did not want sergeants accepting Aramark[] food[-]related grievances," and

---

[1] In his Complaint, Plaintiff identifies certain Defendants with incomplete or incorrectly spelled names.  (*See* Compl. 2–5.)  The Court uses the complete and correct spellings of Defendants' names as provided by Defendants.

[2] The Complaint does not use consistent page numbering.  For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the Amended Complaint.

refused to accept Plaintiff's grievance.  (*Id.* at 6 (quotation marks omitted).)  On June 26, July 2, and July 7, 2018, Plaintiff's meals contained undercooked meat that was "pink and bloody internally[,] along with [overcooked] rice, spag[h]etti, and noodles."  (*Id.*)  Plaintiff requested a replacement tray, but the kitchen staff told him to "cook out the food . . . in the microwave." (*Id.*)  However, Plaintiff had no access to a microwave.  (*Id.*)  On July 20, 2018, Plaintiff was served a meal of chili and beans that "reeked of old[, ]rotting food."  (*Id.*)  Correctional staff assured him that the food was safe to eat, but after he consumed it, he "began to suffer several ailments."  (*Id.*)  On August 2, 9, 11, 14, and 24, 2018, Plaintiff again "received undercooked meat on his trays along with [overcooked] spag[h]etti served on mold[y] meal trays."  (*Id.* at 7.) On August 14, 2018, Plaintiff attempted to submit another grievance, this time with Sergeant Martinez ("Martinez"), but Martinez refused to accept the grievance, saying he was prohibited from accepting food-related grievances.  (*Id.*)

Plaintiff alleges that his juice containers were "always covered in mold," and so he did not drink his juice and therefore "usually was extremely thirsty and dehydrated."  (*Id.*)  Plaintiff also states that his meal trays were "always short with minimal items and small portions," causing him "to lose significant weight" and experience "fatigue from lack of nutrients."  (*Id.*) Plaintiff "continues to receive [undercooked] foods [two to three times] a week served on mold[y] meal trays, that almost every day contain leftover[,] dirty foods from previous meals as a result of inmate workers failing to property clean the tray[s]."  (*Id.* at 8.)  Further, on six separate occasions, Plaintiff has discovered human hair in his meals "as a result of inmate workers not being properly supervised when preparing inmate meals," and failing "to wear hair nets, beard nets, and gloves when handling inmate meals."  (*Id.*)  Plaintiff also alleges that the

inmate kitchen "is extremely dirty, and covered in flies, along with mice/rats who invade the food supply on a constant basis." (*Id.* at 9.)

"Plaintiff avers[] that [D]efendants Mendoza, Blackman, Vollmer, Middleton, Delgrosso, Spano, Diaz, [and] Westchester County[] had sufficient prior knowledge that the food being served to inmates at [WCJ] was substandard, and causing dozens of inmates to become sick," as demonstrated by the "previous and present lawsuits, grievances, complaints, and daily meetings . . . where grievances are discussed." (*Id.*)  However, Defendants have not corrected the problem, and inmates continue to become ill due to poor food quality and sanitation. (*Id.*)  Plaintiff has experienced weight loss, nausea, vomiting, diarrhea, fatigue, headaches, blurred vision, hunger pangs, and stomach cramps as a result of the substandard food. (*Id.* at 10.)  He seeks $300,000 in compensatory damages and $1,000,000 in punitive damages. (*Id.* at 12–13.)

B. Procedural Background

Plaintiff's Complaint and application to proceed in forma pauperis ("IFP") were filed on September 12, 2018. (Dkt. Nos. 1–2.)  Chief Judge McMahon granted Plaintiff's IFP application on September 17, 2018. (Dkt. No. 4.)  On February 7, 2019, Aramark, Blackman, and Mendoza (together, "Aramark Defendants") filed a Motion to Dismiss (the "Aramark Motion"). (Dkt. Nos. 21–22.)  Plaintiff did not submit an opposition, Aramark Defendants did not file a reply, and on May 24, 2019 the Court deemed the Aramark Motion fully submitted. (Dkt. No. 24.)  On August 22, 2019, the Court issued an Opinion and Order ("2019 Opinion") granting the Aramark Motion and dismissing without prejudice Plaintiff's claims against Aramark Defendants. (Op. & Order ("2019 Op.") (Dkt. No. 31).)  *See also Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425 (S.D.N.Y. Aug. 22, 2019).  On September 5, 2019, County Defendants filed the instant Motion. (Not. of Mot.; County Defs.' Mem. of Law in Supp. of Mot. ("Defs.'

4

Mem.") (Dkt. No. 34).)  On October 23, 2019, the Court deemed the Motion fully submitted.

(Dkt. No. 36.)  Plaintiff has not opposed the Motion, and County Defendants have not filed a

reply.

## II. Discussion

County Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) on several grounds, including that Plaintiff fails to state a *Monell* claim, fails

to allege personal involvement, and does not have a constitutional right to an internal grievance

process.  (Defs.' Mem. 7–12, 15.)

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.*  (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering County Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation

marks omitted).  However, when the complaint is drafted by a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at

*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in

response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of

Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents

either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in

bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation

marks omitted).

      B. Analysis

           1. *Monell* Liability Against the County

      "To state a claim under . . . § 1983, the plaintiff must show that a defendant, acting under

color of state law, deprived him of a federal constitutional or statutory right."  *Sykes*, 723 F.3d at

405–06 (citation omitted).  "Congress did not intend municipalities to be held liable [under

§ 1983] unless action pursuant to official municipal policy of some nature caused a constitutional

tort."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Thus, "to

prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a

plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a

constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d

Cir. 2008) (citation omitted).  The fifth element reflects the notion that "a municipality may not

be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)).  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

Plaintiff's allegations fall into the third and fourth categories discussed in *Brandon*. Plaintiff alleges that Defendants "had sufficient prior knowledge that the food being served to inmates at [WCJ] was substandard, and causing dozens of inmates to become sick."  (Compl. 9.) Defendants allegedly knew this due to (1) "previous and present lawsuits, grievances, [and] complaints," and (2) "daily meetings, where [D]efendants amongst others participate . . . [and]

where grievances are discussed." (*Id.*)  Notwithstanding this knowledge, Plaintiff alleges that

Defendants have failed to act to correct this problem.  (*Id.*)  Plaintiff also alleges that Defendants

fail to supervise inmate workers preparing food and cleaning up after meals.  (*Id.* at 8.)  Due to

this lack of supervision, workers do not wear hair nets, beard nets, and gloves when handling

inmate meals, and the kitchen is very dirty and covered in flies, rats, and mice.  (*Id*. at 8–9.)  As a

result, Plaintiff has on six occasions found hair in his food.  (*Id*. at 8.)

The Court considered these allegations in adjudicating the Aramark Motion and

concluded that they did not make out a claim for *Monell* liability.  (2019 Op. 8–13.)  Here, the

Court reaches the same conclusion for the same reasons.

First, Plaintiff's *Monell* claim fails because he provides insufficient detail about

"previous and present lawsuits, grievances, [and] complaints," (Compl. 9), to support the

inference that Defendants' alleged inaction is due to indifference.  Plaintiff may establish

deliberate indifference from the fact that there "were repeated complaints of civil rights

violations" and that "the complaints [were] followed by no meaningful attempt on the part of the

municipality to investigate or to forestall further incidents."  *Shepherd v. Powers*, No. 11-CV-

6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citation and quotation marks

omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7, 9

(W.D.N.Y. Feb. 6, 2015) (same).  However, pleadings that have successfully established

deliberate indifference by pointing to previous complaints and suits have named and detailed

these prior complaints and suits.  *See Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL

1379652, at *20–21 (S.D.N.Y. Mar. 26, 2015) (holding that the plaintiff sufficiently alleged need

for better training or supervision where the plaintiff listed and detailed nine other complaints

raising similar allegations against the same defendants); *McCants v. City of Newburgh*, No. 14-

CV-556, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged a need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants). By contrast, courts have dismissed deliberate indifference claims when a pleading merely asserts without detail that there have been many prior complaints. *See Strong v. City of Syracuse*, No. 16-CV-1054, 2020 WL 137250, at *3 (N.D.N.Y. Jan. 13, 2020) (alleging "frequent" and "widespread" misconduct, without more, is insufficient to create a plausible deliberate indifference claim); *Arrindel-Martin v. City of Syracuse*, No. 18-CV-780, 2018 WL 6622193, at *7 (N.D.N.Y. Dec. 18, 2018) (same, based on alleged "numerous" complaints); *see also Walker v. City of New York*, No. 14-CV-808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (dismissing deliberate indifference claim where the "[p]laintiff does not allege any specific facts as to the contents of the complaints, how many were filed, and when they were filed"). Here, Plaintiff provides no detail about the nature or content of past lawsuits, grievances, and complaints, (*see* Compl. 9), and thus fails to make out a plausible claim of deliberate indifference.

Second, Plaintiff's *Monell* claim based on a failure to supervise inmate workers who clean and prepare meals, (Compl. 8), fails for the additional reason that the Complaint does not identify specific training deficiencies. To set forth a failure to train claim, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman*, 2015 WL 1379652, at *22. In particular, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been

deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390 (footnote omitted).  Here, Plaintiff merely alleges that "inmates are not properly supervised when cleaning inmate meals[] . . . or preparing / serving food[]."  (Compl. 8.)  This is a "boilerplate assertion[]" that does not allege any specific deficiency in Defendants' training or supervision.  *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where a plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").  The Complaint is "devoid of any detailed factual allegations" showing the absence of "a relevant training or supervisory program."  *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").  Because he does not allege a specific deficiency in Defendants' training program, (*see* Compl. 8), Plaintiff's failure to train claims must be dismissed.

Plaintiff separately alleges that his complaints were twice rejected pursuant to a WCDOC policy of refusing food-related grievances.  (Compl. 6, 7.)  The Court does not decide whether these allegations are sufficient to show an official policy, because, even if they were, they do not satisfy the requirement under *Monell* that the Plaintiff allege the deprivation of a constitutional right.  Courts in the Second Circuit have held that "a prisoner has no constitutional right to a prison grievance procedure or to have his grievances investigated."  *Martinez v. Cunningham*, No. 19-CV-10517, 2020 WL 1877788, at *5 (S.D.N.Y. Apr. 13, 2020) (quotation marks omitted) (collecting cases); *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (holding that the plaintiff "does not have a protected liberty interest in having his grievances

investigated at the level of thoroughness that he desires, and therefore he [cannot] assert a due process claim as to such failures"); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983" (citation omitted)).  As a result, Plaintiff cannot maintain a *Monell* claim based on WCDOC's handling of his grievances.

Accordingly, because Plaintiff fails to allege a policy or custom that deprived him of his constitutional rights, his *Monell* claims against the County and against Spano, Diaz, Middleton, Delgrosso, and Vollmer in their official capacity must be dismissed.

## 2. Personal Involvement of Spano, Diaz, Middleton, Delgrosso, and Vollmer

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations, italics, and quotation marks omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL

12

365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff alleges that Spano, Diaz, Middleton, Delgrosso, and Vollmer (collectively, the "Individual Defendants") failed to act despite sufficient prior knowledge that food was substandard and causing dozens of inmates to get sick.  (Compl. 9.)  He alleges that their knowledge came from prior "lawsuits, grievances, [and] complaints," and that they "participate[d] in daily meetings where grievances [were] discussed."  (*Id.*)

The Court concluded in the 2019 Opinion that these allegations do not sufficiently allege personal involvement of the Aramark Defendants.  (2019 Op. 6–8.)  Here, the Court reaches the same conclusion for the County Defendants, for the same reasons.  "Plaintiff does not provide facts alleging *what* [Individual Defendants] knew about the … food problem or *when* they knew about it."  *Quick*, 2019 WL 1083784, at *5 (emphasis original).  (*See generally* Compl.)  Nor does the Complaint contain facts suggesting that the Individual Defendants participated directly in serving Plaintiff poor food, created a policy or custom of serving poor food, or were grossly negligent in allowing others to prepare poor food.  (*Id.*)  As discussed *supra*, the Complaint also fails to sufficiently allege that Individual Defendants were deliberately indifferent to the poor food quality.  (*Id.*)

Plaintiff separately alleges that "Delgrosso . . . and the higher ups did not want sergeants accepting Aramark[] food[-]related grievances."  (Compl. 6 (quotation marks omitted).)  The Court does not decide whether this allegation is sufficient to show personal involvement, because, as discussed *supra*, even if it were, Plaintiff does not have a constitutional right to a prison grievance procedure.

Accordingly, because he fails to adequately allege their personal involvement in depriving him of his constitutional rights, the claims against Spano, Diaz, Middleton, Delgrosso, and Vollmer in their individual capacities must be dismissed.[3]

### III. Conclusion

For the foregoing reasons, County Defendants' Motion To Dismiss is granted.[4]  Because this is the first adjudication of Plaintiff's claims against the County Defendants, the dismissal is without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion.  The amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion.  Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint, and therefore must contain all of the claims, factual

---

[3] Defendants also argued that Plaintiff's claims should be dismissed because they do not allege a constitutional violation arising out of a condition of confinement.  (Defs. Mem. 12–15.) Because the Complaint must be dismissed for failure to state a *Monell* claim and failure to allege facts sufficient to show the personal involvement of Individual Defendants, the Court need not resolve these additional arguments.  Plaintiff will have the opportunity to respond to this argument if he decides to file an amended complaint.

[4] The Court notes that allegations nearly identical to Plaintiff's very concerning claims regarding poor food sanitation and quality have recently been raised in numerous other actions against Westchester County and Aramark in this District.  *See, e.g.*, *Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841 (S.D.N.Y. Jan. 28, 2020); *Smith v. Westchester County*, No. 19-CV-1283, 2019 WL 5816120 (S.D.N.Y. Nov. 7, 2019); *Rivera*, 2019 WL 3958425; *Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859 (S.D.N.Y. Aug. 19, 2019); *Dawson v. Westchester County,* No. 18-CV-7790, 2019 WL 3408899 (S.D.N.Y. July 29, 2019); *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020 (S.D.N.Y. July 25, 2019); *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661 (S.D.N.Y. June 10, 2019); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566 (S.D.N.Y. Mar. 29, 2019); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634 (S.D.N.Y. Mar. 25, 2019); *Hanner v. Westchester County*, No. 16-CV-7610, 2019 WL 1299462 (S.D.N.Y. Mar. 21, 2019); *Quick*, 2019 WL 1083784; *White v. Westchester County*, No. 18-CV-990, 2018 WL 6493113 (S.D.N.Y. Dec. 10, 2018); *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175 (S.D.N.Y. Mar. 30, 2018).  The Court expects that Counsel for Defendants also takes note and will discuss the serious allegations raised in these cases with their clients.  The day that a motion such as the one filed here will be denied is coming.

allegations, and exhibits that the Plaintiff wishes the Court to consider.  If Plaintiff fails to abide

by the 30-day deadline, his claims may be dismissed with prejudice.

  The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt.

No. 33), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:  September 23, 2020
    White Plains, New York

                KENNETH M. KARAS
                UNITED STATES DISTRICT JUDGE

15